UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PAETEC COMMUNICATIONS, INC.,<br><br>One PAETEC Plaza<br>600 Willowbrook Office Park<br>Fairport, New York 14450<br><br>              Plaintiff,<br><br>v.<br><br>ICG TELECOM GROUP, INC.,<br><br>161 Inverness Drive West<br>Englewood Colorado 80112<br>              Defendant. | No. 1:05CV01484 (CKK) |

## DEFENDANT ICG TELECOM GROUP, INC.'S
## ANSWER AND COUNTERCLAIM

Defendant ICG Telecom Group, Inc. ("ICG") pursuant to Fed. R. Civ. P. 12(a) and 13(a), hereby files this Answer and Counterclaim to the Complaint filed by Plaintiff Paetec Communications, Inc. ("Paetec").

### ANSWER

1.    ICG lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 1.

2.    ICG admits the allegations contained in paragraph 2.

3.    The allegations contained in paragraph 3 constitute a legal conclusion to which no response is required.

4.  The allegations contained in paragraph 4 constitute a legal conclusion to which no response is required.

5.  The allegations contained in the first sentence of paragraph 5 constitute a legal conclusion to which no response is required. ICG admits the allegations contained in the second, third, fourth, and fifth sentences of paragraph 5. The allegations contained in the sixth sentence of paragraph 5 constitute a legal conclusion too which no response is required.

6.  ICG admits the allegations contained in paragraph 6.

7.  The allegations contained in paragraph 7 constitute a legal conclusion to which no response is required.

8.  ICG lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 8.

9.  ICG denies the allegations contained in paragraph 9.

10. ICG denies the allegations contained in paragraph 10.

11. ICG denies the allegations contained in paragraph 11.

12. ICG denies the allegations contained in paragraph 12.

13. ICG denies the allegations contained in paragraph 13.

14. ICG denies the allegations contained in paragraph 14.

15. The allegations contained in paragraph 8 constitute a reservation of rights to which no response is required.

16. ICG incorporates the responses in paragraphs 1 through 15 as if fully set forth herein.

17. ICG denies the allegations contained in paragraph 17.

18. ICG denies the allegations contained in paragraph 18.

19. ICG incorporates the responses in paragraphs 1 through 18 as if fully set forth herein.

20. ICG lacks sufficient knowledge or information to form a belief as to truth of the allegations contained in paragraph 20.

21. ICG lacks sufficient knowledge or information to form a belief as to truth of the allegations contained in paragraph 21.

22. ICG denies the allegations contained in paragraph 22.

23. ICG denies the allegations contained in paragraph 23.

24. ICG denies the allegations contained in paragraph 24.

25. ICG denies the allegations contained in paragraph 25.

26. ICG incorporates the responses in paragraphs 1 through 25 as if fully set forth herein.

27. ICG denies the allegations contained in paragraph 27.

28. ICG denies the allegations contained in paragraph 28.

29. ICG denies the allegations contained in paragraph 29.

30. ICG incorporates the responses in paragraphs 1 through 29 as if fully set forth herein.

31. ICG denies the allegations contained in paragraph 31.

32. ICG denies the allegations contained in paragraph 32.

33. ICG denies the allegations contained in paragraph 33.

Any allegations contained in the Complaint that are not specifically admitted, are hereby denied. Furthermore, Defendant ICG denies any allegations or requests for relief to which no response is required.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

Plaintiff's Complaint fails to state a claim upon which relief can be granted.

### Second Affirmative Defense

Plaintiff's claims are barred by the doctrine of laches.

### Third Affirmative Defense

Plaintiff's claims are barred by the doctrines of estoppel and waiver.

### Fourth Affirmative Defense

Plaintiff's claims are barred because Plaintiff failed to mitigate damages.

### Fifth Affirmative Defense

Plaintiff's claims are barred by failure of consideration.

### Sixth Affirmative Defense

ICG is not a proper party with regard to the claims stated in Plaintiffs' Complaint.

ICG reserves the right to assert additional affirmative defenses.

## RESERVATION OF RIGHT TO ASSERT THIRD PARTY CLAIMS

ICG reserves the right to assert third-party claims, after further review of the facts and receipt of responses to discovery.

## COUNTERCLAIM

### Parties

1.  Counter-Plaintiff ICG is a Colorado corporation with its principal place of business at 161 Inverness Drive West, Englewood, Colorado 80112. ICG is a local and long distance carrier that provides its service on a retail and wholesale basis.

2.  Counter-Defendant Paetec is a Delaware corporation with its principal place of business located at One PaeTec Plaza, Willowbrook Office Park, Fairport, New York. Paetec provides local and long distance telecommunications services, including interstate and intrastate exchange access services.

## Jurisdiction and Venue

3.  The Court has jurisdiction over these Counterclaims pursuant to 28 U.S.C. § 1331 because the action arises under federal law. In addition, the Court has supplemental jurisdiction under 28 U.S.C. § 1367(a).

4.  Venue in this district is proper pursuant to 28 U.S.C. § 1391(a) as Plaintiff/Counterclaim-Defendant Paetec has submitted to the jurisdiction of this Court by filing its Complaint.

## Background

5.  ICG provides its local exchange service on a wholesale basis to several customers that use the Integrated Services Digital Network Primary Rate Interface ("PRI") service. PRI is a complex voice and data service that provides access to the public switched telephone network. This service provides end users with 23 digital channels and one data channel per PRI. A PRI gives end users access to both voice and data services, including inbound calls, outbound calls, 800 service, and circuit switched data.

6.  ICG's PRI customers utilize ICG's service as part of an overall solution to offer toll-free service (e.g., 800 service), including toll-free service used for teleconferencing services and prepaid calling card services. ICG's PRI customers are toll-free subscribers, as well as Responsible Organizations ("RespOrgs"), as those terms are defined in Section 52.101(b) and (e) of the Federal Communications Commission Rules (47 C.F.R. § 52.101(b) & (e)).

7. A RespOrg is an entity chosen by a toll-free subscriber to reserve toll-free numbers and to manage and administer the appropriate records in the toll-free database known as the Service Management System ("SMS") Database. ICG's PRI customers that are both toll-free subscribers and RespOrgs can reserve numbers on their own behalf, access the SMS Database, and enter and amend data about toll-free numbers within their control. Such data includes routing and billing information applicable to each toll-free number.

8. The toll-free SMS Database is not part of the public switched network. The SMS Database interconnects to Service Control Points ("SCPs") and sends SCPs information and call processing instructions needed to process and complete a telephone call.

9. A SCP is a computer database in the public switched network. Network switches operated by local exchange carriers, such as Paetec, access the SCP to obtain call processing instructions regarding where to route calls and which carrier to bill for calls. SCPs also provide telecommunications carriers with the capability of entering and storing data regarding the processing and completion of telephone calls.

10. Upon information and belief, ICG's PRI customers provide toll-free service to their end users. When PRI customers' end users initiate a telephone call to a toll-free telephone number and Paetec is the originating local exchange carrier, Paetec accesses the SMS Database to determine where to route the call and which carrier to bill originating access charges.

11. Upon information and belief, the SMS Database records associated with toll-free numbers assigned to ICG's PRI customers include routing information directing Paetec to route the calls to ICG. In accordance with the SMS Database records associated with ICG's PRI customers' toll- free numbers, Paetec routed the calls to ICG.

12. Upon information and belief, the SMS Database records associated with toll-free numbers owned by ICG's PRI customers does not include a Carrier Identification Code ("CIC") or includes a generic psuedo-local exchange carrier ("LEC") CIC. The CIC advises the originating local exchange carrier, such as Paetec, of the identity of the carrier to bill for originating access.

13. Under the Carrier Access Billing System ("CABS"), originating access charges related to toll-free telephone calls should be billed to the carrier that owns the relevant toll-free number. ICG does not own any toll-free numbers.

14. Upon information and belief, ICG's PRI customers who are both toll-free subscribers and RespOrgs, failed to enter a CIC for toll-free numbers within their control in an effort to avoid incurring intrastate and interstate access charges.

15. Paetec or its LEC agent or representative, which has access to the data contained in the SMS Database and control over the routing of these types of calls, has the ability to identify and block any calls that are not associated with a proper and billable CIC. ICG does not have access to the SMS Database, and therefore, is unable to: (i) identify the third parties who have failed to input a CIC for their toll-free numbers in the SMS Database or (ii) block that traffic.

16. During the period from approximately 2000 to the present, Paetec charged ICG for interstate and intrastate access service for originating toll-free calls. ICG paid a portion of amounts charged during the period of November 2000 through the present totaling an amount to be determined. ICG has disputed charges for intrastate and interstate access service related to such toll-free calls billed from November 2000 to the present.

17. During the period from approximately 2000 to the present, ICG provided Paetec telecommunications services, including interstate and intrastate switched access services. ICG

provided these services in accordance with ICG's tariffs on file with state public utility commissions, including the California Public Utilities Commission and Washington Utilities and Transportation Commission, and the Federal Communications Commission.

18. During the period of approximately April 2000 through September 2005, ICG sent Paetec invoices for interstate and intrastate switched access charges. ICG's charges complied with all applicable tariffs. An amount of $28,746.25 for interstate and intrastate switched access charges remains due and owing.

## COUNT ONE
### (Violation of 47 C.F.R. § 201(b))

19. ICG incorporates the allegations contained in paragraphs 1 through 18 above as if fully set forth herein.

20. Section 201(b) of the Communications Act provides: "All charges, practices, classifications, and regulations for and in connection with such communication service, shall be just and reasonable, and any such charge, practice, classification, or regulation that is unjust or unreasonable is declared to be unlawful."

21. Paetec's practice of charging ICG access fees related to toll-free calls from ICG's PRI customers' end users that do not have a proper and billable CIC associated with the relevant toll-free numbers violates Section 201(b) of the Communications Act (47 U.S.C. § 201(b)) because ICG is not responsible for such charges.

22. Paetec's access service charges are unjust and unreasonable in violation of 47 U.S.C. § 201(b).

## COUNT TWO
### (Violation of D.C. Code Ann. § 1-204.93)

23. ICG incorporates the allegations contained in Counterclaim paragraphs 1 through 22 above as if fully set forth herein.

24. Section 1-204.93 of the District of Columbia Code provides: ". . . The charge made by any such public utility for any facility or services furnished, or rendered, or to be furnished or rendered, shall be reasonable, just, and non discriminatory. Every unjust or unreasonable or discriminating charge for such facility or service is prohibited and is hereby declared unlawful."

25. Paetec's practice of charging ICG access fees related to toll-free calls from ICG's PRI customers' end users that do not have a proper and billable CIC associated with the relevant toll-free numbers violates Section 1-204.93 of the District of Columbia Code because ICG is not responsible for such charges.

26. Paetec's access service charges are unjust and unreasonable in violation of D.C. Code Ann. § 1-204.93.

## COUNT THREE
### (Unjust Enrichment)

27. ICG incorporates the allegations contained in Counterclaim paragraphs 1 through 26 above as if fully set forth herein.

28. Paetec received payments, of a total amount to be determined, from ICG for access services charges for which ICG was not obligated to pay. Paetec received a benefit from ICG to which it was not entitled.

29. Paetec received switched access services from ICG, but failed to pay the invoiced charges for those services. Paetec received a benefit from ICG to which it was not entitled.

30. Paetec has been unjustly enriched by ICG.

## COUNT FOUR
### (Negligence)

31. ICG incorporates the allegations contained in Counterclaim paragraphs 1 through 30 above as if fully set forth herein.

32. During the period of October 2002 to the present, Paetec has charged, and is still charging, ICG access fees related to toll-free calls from ICG's PRI customers' end users that do not have a proper and billable CIC associated with the relevant toll-free numbers.

33. Paetec has the ability to identify toll-free telephone calls that do not have a proper and billable CIC associated with the relevant toll-free numbers and to block all such toll-free traffic.

34. Paetec was negligent by failing to identify toll-free telephone calls that do not have a proper and billable CIC associated with the relevant toll-free numbers and by failing to block all such toll-free traffic. As a result of Paetec's negligence, it charged ICG for access services charges for which ICG was not obligated to pay.

35. Paetec has caused ICG to suffer damages in an amount to be determined, plus interest.

## COUNT FIVE
### (Violation of Tariffs)

36. ICG incorporates the allegations contained in Counterclaim paragraphs 1 through 35 above as if fully set forth herein.

37. ICG filed tariffs with the Federal Communications Commission and with state public utility commissions, including California Public Utilities Commission and Washington Utilities and Transportation Commission. The tariffs set forth the rates, terms, and conditions concerning ICG's switched access services.

38. During the period from approximately April 2000 through September 2005, Paetec accepted interstate and intrastate switched access services from ICG and ICG invoiced Paetec in accordance with the terms of the applicable tariffs. The amount of $28,746.25 for switched access services remains due and owing by Paetec to ICG.

39. As a result of Paetec's breach of applicable tariffs, ICG has suffered damages of $28,746.25, plus interest and late fees.

## COUNT SIX
### (Breach of Implied Contract)

40. ICG incorporates the allegations contained in Counterclaim paragraphs 1 through 39 above as if fully set forth herein.

41. During the period of approximately April 2000 through September 2005, ICG provided Paetec with intrastate and interstate switched access services with the expectation that Paetec would compensate ICG for such services. Paetec accepted and benefited from the interstate and intrastate switched access services provided by ICG.

42. A contract implied in fact concerning interstate and intrastate access services exists between ICG and Paetec. ICG performed all obligations under the implied contract. Paetec has breached the implied contract by failing to pay amounts due and owing for services provided pursuant to the implied contract.

43. As a result of Paetec's breach of the implied contract, ICG has suffered damages of $28,746.25, plus interest and late fees.

## **REQUEST FOR RELIEF**

WHEREFORE, ICG requests that the Court order the following relief:

1. Issue an order requiring Paetec to pay ICG damages of an amount to be determined, plus interest and late fees.

2. Issue an order enjoining Paetec from charging ICG access fees related to toll-free calls from ICG's PRI customers' end users that do not have a proper and billable CIC associated with the relevant toll-free numbers.

3. Issue an order declaring that Paetec's practice of charging ICG access fees related to toll-free calls from ICG's PRI customers' end users that do not have a proper and billable CIC associated with the relevant toll-free numbers to be an unjust and unreasonable practice in violation of 47 U.S.C. § 201(b) and constitute unjust and unreasonable charges in violation of D.C. Code Ann. § 1-204.93.

4. Issue an order granting ICG its reasonable attorneys' fees and costs; and

5. Any further relief that the Court deems to be just and proper.

Respectfully submitted,

Mitchell F. Brecher (210781)
Debra McGuire Mercer (439233)
GREENBERG TRAURIG, LLP
800 Connecticut Avenue, NW
Washington, D.C. 20006
(202) 331-3100 (telephone)
(202) 331-3101 (facsimile)

October 7, 2005

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of October, 2005, I caused a copy of Defendant ICG Telecom Group, Inc.'s Answer and Counterclaim to be served by prepaid U.S. Mail upon the following:

Jeffrey J. Binder
The Watergate
2510 Virginia Avenue, NW
Washington, DC 20037

_/s/ Debra McGuire Mercer_
Debra McGuire Mercer